**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JOHN DAVIS** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:23-CV-784** |
| | § | |
| | § | |
| **HART CONSUMER PRODUCTS, INC.;** | § | |
| **TECHTRONIC INDUSTRIES NORTH** | § | |
| **AMERICA, INC.; & TECHTRONIC** | § | |
| **CORDLESS GP.** | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, John Davis, files this his Original Complaint against Defendants Hart Consumer Products, Inc., Techtronic Industries North America, Inc and Techtronic Cordless, GP and would show unto the Court the following:

### A.  PARTIES

1.      Plaintiff John Davis is an individual who is a citizen of the State of Texas and resident of Henderson County, Texas.

2.      Defendant Hart Consumer Products, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware, whose home office address is 100 Innovation Way, Anderson, SC 29621 and may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Room 105, Austin, Texas 78701 as its agent for service because Defendant engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from Defendant's business in this state.

Plaintiff's Original Complaint                                                     Page 1

3.      Defendant Techtronic Cordless, GP is a foreign corporation organized and existing under the laws of China, whose home office address is 100 Innovation Way, Anderson, SC 29621 and may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Room 105, Austin, Texas 78701 as its agent for service because Defendant engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from Defendant's business in this state.

4.      Defendant Techtronic Industries North America, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware, whose home office address is 450 East Las Olas Boulevard. Suite 1500, Fort Lauderdale, Florida 33301 and may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Room 105, Austin, Texas 78701 as its agent for service because Defendant engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from Defendant's business in this state.

## B. JURISDICTION AND VENUE

5.      The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000.00.  The Court also has personal jurisdiction over Defendants because at the time of the incident forming the basis of the lawsuit and continuing through the date of filing, they were engaged in business enterprises and/or commercial activity within the State of Texas and such activity directly gave rise to Plaintiff's claims, causes of action and damages.  Furthermore, the facts giving rise to this action occurred in whole or in part, within the State of Texas.

6.      Defendants placed the product at issue into the stream of commerce and took actions which purposefully directed sales of the product toward the State of Texas and it was foreseeable that the product would be sold and used in the State of Texas.

7.      Defendants committed a tort, in whole or in part, in the State of Texas and/or have continuing contacts with the State of Texas.

8.      Venue is proper in the Northern District of Texas, Dallas Division, in that Plaintiff's causes of action accrued within the Northern District of Texas.  The conduct of which Plaintiff complains occurred in the Northern District of Texas.

## C. FACTS

9.      On or about April 17, 2021, Mr. Davis purchased an electric lawn mower, Model HLPM01 40V, which was designed and manufactured by Defendant Hart Consumer Products, Inc. (hereafter "Hart"), Defendant Techtronic Cordless, GP (Hereafter "Cordless"), and Defendant Techtronic Industries North America, Inc. (hereafter "Techtronic"), from Walmart in Gun Barrell City, TX.

10.      Mr. Davis unboxed the lawn mower and started it by pushing the start button and pulling the bail control bar toward the handle.

11.      Mr. Davis then released the bail control bar, as stated in the operator's manual, intending to stop the mower.

12.      A few moments later, Mr. Davis reached down to peel off some additional protective plastic from the side of the mower, believing the blade had stopped when in fact it had not.

13.      The mower grabbed the tip of Mr. Davis' finger and drew his hand into the blade.

14.      Mr. Davis' sustained serious injuries to his right hand including the amputation of

two fingers and attempted reconstruction of a third.

15.     Operation of the motor is controlled by the bail handle control bar. The operator must press that start button, pull the bail control bar toward the handle, holding it there and then release the start button.

16.     The only mechanism for stopping the mower is for the operator to release the bail control bar, which is controlled by a torsion spring that returns the bail control bar to the off position.

17.     Upon inspection, the torsion spring on the mower in question was not designed, manufactured, and/or installed correctly and did not return the bail control bar to it's default off position, and did not disengage the motor.

18.     Further, the mower was silent while running, providing no indication to Mr. Davis that the blade was still spinning.

19.     As such, the mower was defectively designed, manufactured and assembled by Defendants.

## D.  STRICT PRODUCT LIABILITY

20.     At the time of this occurrence, Defendants were, and are now, engaged in the business of designing, manufacturing and packaging certain products, including the mower in question, for sale to and for use by members of the general public.  Defendant Hart placed the mower into the stream of commerce by selling the mower to a retailer in the State of Texas.

21.     On or about April 17, 2021, the mower was sold in the State of Texas.  The mower was in the same condition at the time Plaintiff was injured as it was when it was originally manufactured.  Defendant Hart shipped the mower fully assembled.

22.     The mower was defective and unsafe for its intended purpose at the time it left the

control of Defendant Hart.  The product was defective in that the torsion spring was not designed, manufactured, and/or installed correctly and did not return the bail control bar to the default off position, and did not disengage the motor. Also, the mower should have had an indicator to let the operator know when the mower blade was still spinning.

23.     The mower was defective and unreasonably dangerous to its intended users such as the Plaintiff, and the unreasonably dangerous condition was the cause of the injuries sustained by Plaintiff and Plaintiff invokes the doctrine of strict liability.

24.     The Defendants manufactured, distributed and/or sold the mower (including the mower's defective torsion spring), or caused it to be manufactured, distributed and/or sold and knew or should have known of its dangerous propensities, and failed to warn or provide an adequate warning to users of such dangers and said failure rendered the product defective and unreasonably dangerous for its intended use, all of which was a producing cause of Plaintiff's injuries.

25.     The Defendants are strictly liable pursuant to 402(a) of the Restatement of Torts 2nd as the mower was defective and unreasonably dangerous at the time it was distributed, and the Defendants failed to warn Plaintiff or other prospective users of said defects and dangers.

26.     These defects were the producing cause of Plaintiff's injuries and damages more fully described herein.

## E.  BREACH OF WARRANTY

*Warranty of Merchantability*

27.     Defendants impliedly warranted to the public generally that the mower was of merchantable quality and was safe and fit for the purpose intended when used under ordinary circumstances and in an ordinary manner.  Defendants were merchants with respect to the product in question and the mower was not merchantable as warranted in that the torsion spring

did not return the bail control bar to the default off position and did not disengage the motor. As such, the mower was inherently dangerous to all who used it and could not be used in the manner intended without serious risk of physical injury to the user.

***Express Warranty***

28.    Defendants warranted to the public generally that "this HART™ brand outdoor product is free from defect in material and workmanship".  This express warranty was made within Defendant Hart's Limited Warranty Statement.  Said representation became part of the basis of the bargain.  However, the mower at issue was not of the quality or condition expressly warranted by the Defendants.  Specifically, the mower was defective that the torsion spring did not return the bail control bar to the default off position and did not disengage the motor. Also, the mower was silent while running, providing no indication to the user that the blade was still spinning. As such, the mower was inherently dangerous to all who used it and could not be used in the manner intended without serious risk of physical injury to the user.  Plaintiff suffered injuries and damages more fully set forth below as a proximate result of Defendants' breach of the foregoing warranty.

## F.  NEGLIGENCE

29.    Defendants were negligent in the manufacturing, design, assembly and inspection of the mower.  The design of the mower should have required that the torsion spring return the bail control bar to the default off position and disengage the motor. The design of the mower should have necessitated that the torsion spring, the sole safety mechanism to stop the blades, be housed in a protective casing to prevent damage, malfunction or tampering.  The design of the mower should have provided for an alert or overt indicator that the blades were spinning as an electric mower is nearly silent while in use.

Plaintiff's Original Complaint                                                                              Page 6

30.    The negligence, carelessness and recklessness of the Defendants, consisted of, but is not limited to, the following:

a)    Failure to adequately warn of the inherent dangerous propensities of the mower;

b)    Failure to adequately provide for protective measures against failure, tampering, or damage of the torsion spring;

c)    Failure to employ adequate measures in the assembly, design, manufacture, production, inspection and/or distribution of the mower;

d)    Failure to protect the mower from ceasing to function properly;

e)    Failure to inspect the mower as to prevent the accident or accidental dysfunction from occurring;

f)    Failure to properly design, manufacture and/or distribute the mower in such a manner as would afford adequate protection from injury of the lawful user thereof;

g)    Failure to supply adequate notices or warnings of the dangers of the mower;

h)    Failure to design, manufacture and assemble the mower in such a manner that it could not easily become defective;

i)    Failure to warn the plaintiff and/or consumers of the risk of the mower;

j)    Failure to exercise due care and caution in the design, assembly and manufacture and distribution of the mower under the circumstances;

k)    Failure to place or install obvious or conspicuous warning notices in an obvious or conspicuous place on the mower;

l)    Failure to place and install adequate warning notices on the mower;

m)  Failure to comply with various laws, regulations and customs of the industry with regard to safety in such products including but not limited to the laws of the United States of America and the State of Texas;

n)  Failure to assemble the mower so as to prevent an accident;

o)  Failure to properly inspect the mower prior to placing it in the stream of commerce;

p)  Failure to design and/or distribute the mower with adequate materials and safety devices;

q)  Distributing a defective mower to the general public and the plaintiff;

r)  Advertising a defective mower to the general public and the plaintiff;

s)  Failure to inspect the mower prior to the mower being sold and prior to plaintiff using the mower;

t)  Failure to properly train, control and supervise Defendants' employees in the design, manufacture, assembly, inspection and/or distribution of the mower;

u)  Making false representations to plaintiff and/or the purchasers of the mower, that the mower was safe for use, when in fact said product was defective and in a dangerous condition;

v)  Utilizing defective materials in the manufacture of the mower;

w)  Distributing a mower with defective or improperly designed torsion spring / critical safety mechanism; and

x)  Failure to place adequate warnings on the mower with respect to the dangers associated with the inability to hear the motor running.

31.    Said acts and omissions of the part of the Defendants, taken by themselves or in combination, were a proximate cause of Plaintiff's injuries and damages.

## G. GROSS NEGLIGENCE

32.    Plaintiff would show that the actions of each of the Defendants, jointly and severally, individually and/or by and through their agents, employees, vice-principals, management, and officers set forth above, were heedless and reckless and evidence an entire want of care constituting an actual conscious indifference for the rights, safety and welfare of Plaintiff, and others similarly situated.  These heedless and reckless acts and/or omissions were done with an actual, subjective awareness of the risks involved and these risks, when viewed objectively from the standpoint of the actor, involved an extreme degree of risk due to the probability and magnitude of the potential harm to others.

33.    Plaintiff would show that the actions of the Defendants, jointly and severally, individually and/or by and through its agents, employees, vice-principals, management, and officers set forth above, were performed with a flagrant disregard for the rights of others and with an actual awareness on the part of the Defendant that the acts would, in reasonable probability, result in human death or great bodily harm.  These acts and omissions, on the part of the Defendants, whether taken separately or together, were a producing cause of the damages and injuries sustained by Plaintiff.

## H. DESIGN DEFECT

34.    Plaintiff would show that the design of the mower, including the torsion spring, bail control bar, the lack of a secondary means to turn the mower off, and lack of indicator that blade was still spinning, was defective.   A safer alternative design of the mower existed. Specifically, an alternate design would have in reasonable probability prevented or significantly

reduced the risk of Plaintiff's personal injury and other consumers who have been injured by the engaged motor/blade.  An alternate design existed at the time Defendants placed the subject mower into the stream of commerce.  Said alternate design would not substantially impair the mower's utility.  Said alternate design was economically and technologically feasible at the time the mower left the control of the Defendants by the application of existing or reasonably achievable scientific knowledge.

35.    Said design defect, on the part of the Defendants, was a producing cause of the injuries and damages sustained by Plaintiff.

## I. VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT

Defendants violated the Texas Deceptive Trade Practice-Consumer Protection Act, Business and Commerce Code, Section 17.41 et seq. ("DTPA"), specifically:

§17. 46 (b) (1)        passing off goods or services as those of another;

§17. 46 (b) (2)        causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

§17. 46 (b) (3)        causing confusion or misunderstanding as to the affiliation, connection, or association with, or certification by, another;

§17. 46 (b) (4)        using deceptive representations or designations of geographic origin in connection with goods or services;

§17. 46 (b) (5)        representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not have;

§17. 46 (b) (7)        representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

It was impracticable for Plaintiff to give Defendants written notice under Texas Business & Commerce Code §17.505(a) because Plaintiff needed to file this suit to prevent the expiration of the statute of limitations. Therefore, written notice was not required.

Defendants acts and omissions were a breach of an express or implied warranty §17.50 (a)(B)(2) and were an unconscionable action or course of action §17.50(a)(B)(3).

Defendants acts and omissions were committed knowingly and intentionally.  As such, Plaintiff seeks damages pursuant to §17.50(b)(1), including treble damages and mental anguish damages. Plaintiff seeks an order to restore money which may have been wrongfully acquired pursuant to §17.50(b)(3) DTPA. Plaintiff also seeks court costs and reasonable and necessary attorney's fees pursuant to §17.50(d).

## I.  DAMAGES OF PLAINTIFF

36.    As a direct and proximate result of the occurrence made the basis of this lawsuit, and Defendants' acts as described herein, Plaintiff was caused to suffer severe physical injuries, and to endure damages more fully set forth below.

37.    As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff has suffered damages, both in the past and into the future damages in the form of:

a. Reasonable and necessary medical expenses;

b. Loss of wages and benefits and wage-earning capacity;

c. Physical pain and suffering;

d. Mental anguish and pain and suffering;

e. Physical impairment;

f. Disfigurement;

g. Treble Damages as plead; and

g. Attorney Fees.

## J.  INTEREST

38.    Plaintiff seeks pre-judgment and post judgment interest at the highest legal rate allowed by law.

## K.  PRAYER

39.    WHEREFORE, Plaintiff prays that the Defendants be duly cited to appear and answer herein; and that upon a final trial of this cause, Plaintiff recovers:

a.    Judgment against Defendants, jointly and severally, for Plaintiff's damages as set forth above, in an amount within jurisdictional limits of this Court;

b.    Pre-judgment interest on Plaintiff's damages as allowed by law;

c.    Post-judgment interest at the highest legal rate allowed by law from the date of judgment until paid;

d.    All costs of court; and

e.    Such other and further relief, both general and special, either at law or in equity, to which Plaintiff may show herself justly entitled.

<div style="margin-left:40%">

Respectfully submitted,
*/s/ C. Kyle Pugh*
C. Kyle Pugh
State Bar No. 00789790
kyle@kylepugh.com
Kellie McKee
State Bar No. 24075612
kellie@kylepugh.com
C. Kyle Pugh P.C.
4015 Main Street, Suite 100
Dallas, Texas 75226
Tel: 214-522-4500
Fax: 214-528-7755
Attorneys for Plaintiff

</div>